# APRIL TERM, 1848.

THE MUTUAL INSURANCE COMPANY OF THE CITY AND COUNTY OF ALBANY, appellants, *agt.* CONOVER, respondent.

## Questions discussed.

1. Whether the circuit judge admitted improper and illegal evidence to be given to the jury, in showing, or tending to show, that the secretary of the company had waived the delivery of the *preliminary proofs* of the loss within the time required by the laws and conditions of the policy of the company?

And, whether the testimony of the secretary, that he was in the habit of using his discretion in consenting to the *assignments of policies*; was properly admitted?

2. Whether by the by-laws and policy of the company, the secretary had authority to assent to the giving of a mortgage upon the premises insured, by the assured, and to give a written consent to an assignment of the policy to the mortgagee?

This was an action of assumpsit brought by Conover against the Mutual Insurance Company of the city and county of Albany, upon a policy of insurance, dated July 22, 1836,—tried on the 17th April, 1845, at the Albany circuit, before Hon. AMASA J. PARKER, circuit judge.

The pleadings form a part of the bill of exceptions.

The plaintiff, to maintain the issue on his part, produced the policy of insurance declared upon, and dated as above, (a copy whereof with the conditions is hereto annexed, marked "A,") the execution of which, by the defendants, was admitted by their counsel, and the said policy and conditions were read in evidence to the court and jury. It was admitted that the dwelling-house, number 34 Van Schaick-street, mentioned in said policy, and insured thereby for the sum of $600, and the wood-house in the rear of said dwelling, also mentioned in said policy, and insured for $66, were consumed by fire on the eighteenth of August, 1838. That the said dwelling-house, at

the time of the fire, was of the value of $600, and no more; and that the value of the wood-house in rear thereof, at the time of the fire, was $66, and no more. It was also admitted that Robert Gridley, on the second of October, 1838, swore to the affidavit, forming preliminary proofs, and that on the same day it was handed to Mr. Joice, the secretary of the company. But its admissibility as evidence was objected to on the ground of variance, the averment in the declaration averring that the *plaintiff* had subscribed and sworn to said affidavit, and then that the policy required the insured to make said affidavit, and also on the ground that it was not received within thirty days after the fire, as required by the conditions of the policy. The circuit judge overruled the first objection, and admitted the same in evidence, reserving the second objection to be obviated by proof, and the defendants' counsel excepted.

The affidavit of Robert Gridley, showing the assignment of the policy by Conover, the plaintiff, to him on the 16th May, 1837, and the loss by fire of the buildings insured, on the 18th August, 1838, was then read in evidence.

The testimony is given entire, in order to a proper understanding of the questions raised and discussed on the argument.

*A. D. Robinson* was then called and sworn as a witness on the part of the plaintiff, and testified as follows:—

A short time after the fire I took the policy, went to Mr. Joice, who was secretary, as I supposed; showed him the policy, and told him Mr. Gridley was out of town, and as his agent or attorney, I don't know which, I offered to pay any back assessments; I told him that the premises were burned, and we would expect the insurance. The reply he made was, that the insurance would not be paid, as the property had been conveyed. He gave no other reason that I recollect that the insurance would not be paid, except that the premises had been conveyed by plaintiff. [The testimony of this witness was objected to in time, on the ground that the secretary had no authority to waive any condition of the policy, nor is there any evidence of such authority, and that the averment in the declaration was of a performance of the condition, and not that

it had been waived.   The objection was overruled by the circuit judge and the testimony admitted, and the defendants' counsel excepted.]

*George W. Peckham* was then sworn as a witness on the part of the plaintiff.   [The testimony of this witness was objected to, on the same ground as the last.   The objection was overruled, and the defendants' counsel excepted.]   The witness says, on the 16th of May, 1837, the date of the consent to the assignment on the policy, I called on Mr. Joice, the secretary of the company, and stated to him that Gridley was about to loan plaintiff $500, for which he was going to, or wanted to give a mortgage on the insured property.   That Gridley would let him have the money, provided he would give consent to the assignment of the policy, as security for the mortgage, and I asked for that consent, upon that application ; Joice wrote the consent on the policy, as follows : " I consent that the within policy be assigned to Robert Gridley.   Albany, May 16th, 1837.   E. V. Joice, Secretary."   And signed his name to it ; after he had signed the consent, the policy was taken to my office, and the assignment was drawn and signed by Conover, and the said assignment was read in evidence to the court and jury in the words and figures following :—

" In consideration of one dollar, I hereby assign the within policy to Robert Gridley, as collateral security for the payment of five hundred dollars, and interest.

"16*th May*, 1837.      [Signed]      Nicholas Conover."

Within about a week after the fire, I called on Mr. Joice, and told him Mr. Gridley was out of town and could not make the affidavit within the thirty days, and stated that if it would make any difference, we would endeavor in some way to supply it ; Joice replied that it would make no difference, that they would not pay the insurance, for the reason that Conover had conveyed the premises subsequent to the assignment of the policy to Gridley ; and thinks, but is not certain that he reiterated that it would make no difference.   He answered that no technical advantage would be taken on such ground.

APRIL TERM, 1848.          607

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

*Cross-examined.* I had two interviews; at the first interview, after I had stated Gridley's absence, &c., Joice said that would make no difference, the insurance would not be paid for the reason that Conover had conveyed subsequent to the assignment; this was within a week after the fire; I think the second interview was within the thirty days after the fire, but I am not positive; I think I asked Joice if he would give me a memorandum as to the delivery of the preliminary proofs after the thirty days, and I think Joice then said there would be no technical objections on that ground; I think I recollect having this conversation, but can't be positive.

*Direct examination resumed.* After the consent to the assignment on the 16th of May, 1837, the mortgage for $500, and the assignment of the policy, were delivered to Gridley, and he then let Conover have the $500. The mortgage is dated May 16th, 1837; I don't recollect whether the mortgage was handed to Gridley before or after I went to get the assignment to the policy.

*E. V. Joice,* sworn as a witness for the plaintiff, says, I was secretary of the company on the 16th of May, 1837, and I had been since the organization of the company; and I continued to be secretary until the winter or spring of 1840. [The witness is asked what has been his habit of consenting to the assignment of policies as secretary for the company. This question is objected to; the objection overruled, and the defendants' counsel excepted.] The witness answers, My practice has been to use my discretion, as to whether I would consent to the policy being assigned or not; I did give such consent to such assignment, and without laying it before the board of directors; I can't state as to how common it was, but I consented to the assignment whenever any consent was given. There was no other agent of the company in the city except myself. These assignments were made occasionally to secure mortgages given on the premises; I have no recollection of laying a case of the kind before the directors; I thought I had authority to do so; I have no recollection of refusing when I thought it a proper case. The company had no other agent

in the city except myself; I transacted the business of receiving applications for insurance, and giving policies; I can't say that the occurrences were frequent of policies being assigned to secure a mortgage; I have no recollection of an instance of a written representation being made to the company for their consent to the giving a mortgage; I have no recollection of the board of directors being convened to take such a subject into consideration; I don't know whether I was one of the executive committee; I think there was a book where there was an appropriate place to enter assignments of policies; I kept the only office where there was any business to be done with that company.

*Question.* Did your office have the company's sign over the door?

[Objected to as irrelevant. Objection overruled, and the defendants' counsel excepted.]

*Answer.* Yes, I was the only agent of the company acting at that office, except when the president was present; he had as much authority as I had. I recollect Mr. Robinson and Mr. Peckham calling on me about the preliminary proofs; I recollect something being said about furnishing preliminary proofs; I said to them, all other things being fair, I would not be captious about the time of the delivery of the preliminary proofs; I recollect the grounds they intended to put the defence on, but whether I stated it then or not I don't know. They had heard at the time of the fire that Conover had mortgaged and conveyed the property.

*Cross-examined.* Says, I was secretary, treasurer, director, and attorney of the company; as director, I had no more power than any other director; as secretary, I had no power except what was given me by the by-laws, unless there were sometimes resolutions giving the secretary specific directions; I don't know that I had power to dispense with any condition in any policy. The book now shown me is, I believe, a copy of the charter and by-laws of the company, adopted while I was secretary. (A copy whereof is hereunto annexed, marked "B," forming part of this bill of exceptions.) I have never intended

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

to waive any provision in the policy; if I have done it, I have done it under a misapprehension.

Defendants' counsel asked, Did you ever undertake to consent to an assignment of a policy to secure a mortgage on the premises? Witness says, I did so in this case, and I always supposed there was something in the by-laws, or in some resolution, authorizing me to do it.

The following condition in the policy was then read to the witness:—

"Whenever any one hereinafter insured shall alienate conditionally, by mortgage, his policy shall be void, unless he shall make representation thereof in writing to the directors, stating the amount, and to whom mortgaged, who shall have power to give their assent to said mortgage, or to cancel said policy, as they judge proper on examination of the same, or take other security."

The witness says, I must have dispensed with that condition in the policy in this case, and I think there was something in the resolutions authorizing me to do so; I have never intentionally undertaken to violate any provision; if I have done it, I have done it under a misapprehension; I have a distinct recollection that originally it was required that this giving of a mortgage should be made kown in writing to the board; but I had understood afterward that this was dispensed with by the board, and my answer is, that unless the authority to waive the written statement is contained in the by-laws or minutes of the company, then I had no direct authority; I do not recollect the application for consenting to assign this policy. The charter of the company is dated the 3d of May, 1836; the company was organized in the summer, or in September following; I communicated to Doctor Staats, the president, whatever occurred in his absence whenever he returned to the office; I have no recollection particularly about assignments, but only generally; I told him all that transpired in relation to the company; I have no recollection of telling him about the assignment of any particular policy; Staats was very active about the business of the company, and was in there every day; I

39

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

have no recollection of Gridley's signing any premium note; I have no recollection of any notice being given to the company of any alteration in the insured premises; it was my duty to enter in the minutes of the company all resolutions passed by the board.

*Direct examination resumed.* My acts in consenting to assignments were never questioned by any of the board; I think the directors must have known that such consents were given by me; I mean that I have no recollection of giving to Staats a statement of any particular policy issued, or of any particular assignment consented to; I did, however, make known to him what concerned the company in all things; I have no knowledge of any other than myself consenting to the assignment of a policy while I was there; the general business I transacted for the company consisted chiefly in issuing policies, entering them in the proper 'books, receiving premiums, consenting to assignments, making alterations in policies as to location and premium notes.

[The witness was asked whether the company ever found fault with him for any act he ever did, on the ground that he had exceeded his authority? The question was objected to by defendants' counsel, and the objection overruled by the court, and the defendants' counsel excepted.]

*Answer.* They never did. *By the court.* I don't recollect whether the assignment of this policy was ever recorded, or whether my consent was ever recalled.

*Cross-examination resumed.* I don't know whether there was a separate book kept for entering consents and assignments, or whether they would be entered on the copy of the policy in the policy book; I never considered it important to record the consent to assignments of policies, because when the policy was produced to the company, it would appear whether it was properly done; I have no recollection of ever entering them in the books of the company; I don't know whether there was any difference in the form of the consent when the assignment was made to secure a mortgage on the premises, and when made for another purpose; I do not recollect of communicating any

thing to the board for approval or disapproval. I communicated a great many things to the board when they met; I recollect one risk the board took which I had declined; I don't recollect that the president disapproved of the risk in this case; I don't recollect when I was made a director. The book now shown me contains the minutes of the company while I was secretary. It appears from this book that I was elected a director in May, 1839; I don't recollect whether I was appointed before or not.

*James L'Amoreux* was then sworn as a witness on the part of the plaintiff, and testified as follows: I was a director in the company when it was organized, and continued such director until May last; I was not intimate with its books while Joice was secretary; I met with the board and transacted business with them; I do not recollect of the board being called upon to give a consent to the assignment of a policy, nor of the board giving a consent, or of any written representation made to the board to consent to a mortgage, or to assigning a policy to a mortgage; consents have been given to the assignments of policies; I do not recollect of their having been made by any body except the secretary.

[Plaintiff's counsel offered to show by this witness that the practice of consenting to the assignment of a policy to secure a mortgage, as was done in this case, had been continued by the secretary who succeeded Mr. Joice up to May last. The defendants' counsel objected to this testimony, and the court overruled it.]

*Being cross-examined*, the witness says: I have no knowledge of Mr. Joice consenting to the assignment of any policy prior to 1838, or at any time; the fact that Mr. Joice ever undertook, as secretary, to consent to an assignment of a policy to a mortgage was never communicated to the board to my recollection; nor did I know that he ever gave such consent until after he ceased to be secretary.

*Direct examination resumed.* The witness says: I have no recollection of having heard that Joice had consented to any assignment of any policy prior to August, 1838.

*E. V. Joice*, recalled by defendants' counsel, says: I have

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

examined the books, and I find no resolution of the board authorizing the secretary to consent to the assignment of policies. The by-laws were never entered in any book. The witness is shown the policy book, and after examining, the witness says the date of the first policy entered is the 15th of March, 1837 : we had issued a number of policies before we commenced recording them. That is the policy book of the company while I was secretary; there is no entry in the minutes of my being made a director until May, 1839.

*Direct examination resumed.* The witness says : The meetings of the board of directors were held at my office; I doubt whether I was a director before 1839.

Here the plaintiff rested, and the defendants' counsel moved for a non-suit, on the following grounds :—

1. The preliminary proofs were not delivered within the time required by the conditions of the policy, and the secretary had no authority to dispense with that condition precedent in the policy.·

2. There is no proof that the company ever authorized the secretary to consent to the assignment of this policy, or ever ratified, or knew of that, or any similar act of the secretary, and therefore that that condition of the policy and provision of the by-laws were not complied with.

.3. That by the charter of the company the board itself could not permit this assignment, unless the mortgagee complied with the provisions of the 7th section of the charter, and there is no evidence of such compliance or of any attempt to comply with the provisions of said section.

4. By the terms of the policy and the by-laws, the plaintiff could only be insured to the amount of two-thirds the value of the property insured, and it appears the plaintiff has procured this policy for the whole value of the buildings, and the policy is therefore void.

5. If the policy has been transferred to Gridley, as authorized and directed by the charter and by-laws, then this suit cannot be maintained in the name of Conover, the present plaintiff.

.The circuit judge overruled the motion for a non-suit, and

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

the defendants' counsel then and there excepted. The defendants' counsel then read in evidence a quit-claim deed of the premises insured, and destroyed by fire, as aforesaid, from Nicholas Conover and wife to Abel Conover, dated the 7th day of August, 1837, and recorded in book of deeds No. 58, page 229, &c., of Albany county records.

The plaintiff's counsel objected to the reading of this deed in evidence, and the objection was overruled by the court.

*Barent P. Staats* was then sworn as a witness on the part of the defendants, and testified as follows : I have been president of this insurance company ever since its organization ; I never knew or heard that Joice, as secretary, had consented to the assignment of policies until after this suit was commenced, and I heard it proved on the trial.

*Cross-examined.* I don't know of any policy being assigned while Joice was secretary. I am a stockholder in the company ; I don't recollect that Mr. G. W. Peckham called on me to consent to the assignment of a policy, and that I referred him to Joice ; our company did a considerable business ; several hundred policies were issued ; I presume there have been many policies assigned in insurance companies in this city every year, and probably also in this company. It is not likely that I can remember all the communications Joice made to me as to the policies and their assignments ; I don't pretend that I can now remember a policy I had assigned of my own ; it was assigned by consent of the board, and not by that of Joice.

The policy was then found in the book of policies, and was dated 31st March, 1837.

On looking at the book of minutes, witness says : I find no resolution in the minutes of any consent of the board to my assigning my said policy ; the consent was endorsed on the back of my policy, and signed by Joice. [On its being read, it was precisely in the form of the consent to the assignment in this case.] Witness says his consent to my assignment was given about a year after the policy was issued ; I stated to the board I wished to have my policy assigned, that I have before spoken of ; I made no written statement to the board about it ; it was

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

assigned to secure a mortgage given on the insured premises after the policy was issued; there was no written statement about it; I can't tell who was present at the meeting of the board; I can't state one; there must have been some. [The book of policies produced was then examined, and every policy found assigned was consented to by Joice, as done in this case, as appeared thereby.] The book now shown me contains the charter and by-laws of the company; the by-laws are the same as originally adopted, except that the provision giving to the company the right to rebuild the property burned has been added since Joice was secretary.

The testimony here closed, and the defendants' counsel insisted that there was not sufficient evidence to carry the cause to the jury, and again moved for a non-suit on the same grounds as before taken for that motion. The circuit judge overruled the motion, and decided that there was evidence enough on the question of agency to carry the cause to the jury, so far as regards the question of fact raised by the defendants' counsel. To which decision the defendants' counsel excepted. The defendants' counsel insisted that if the plaintiff was entitled to recover at all, he could in no event recover more than the amount for which he held the policy as security, with interest. The circuit judge so decided and charged the jury, and the defendants' counsel declining to sum up the cause, the case was submitted to the jury under the charge of the judge, who found a verdict for the plaintiff for $777.09 damages, and six cents costs.

The supreme court, in July term, 1846, confirmed the verdict, and gave judgment for the plaintiff. (*Reported* 3 *Denio*, 254.)

The defendants brought their writ of error, and removed the judgment to the court of errors, which was subsequently transferred to this court.

*Charles H. Bramhall, Attorney, and*
*Samuel Stevens, Counsel,* for plaintiffs in error.

☞ *Dates.*—Policy, July 26, '36. Consent, mortgage, and assignment, May 16, '37. Fire, Aug. 18, '38. Deed of Conover, Aug. 7, '37.

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

*First.* The circuit judge admitted improper and illegal evidence to be given to the jury.

1. The preliminary proofs were illegally admitted. (*Folios* 175 *to* 180.)

That proof did not sustain the averment in the declaration. (*Folios* 50, 51, 100, 148.)

Nor did it comply with the requirements and conditions of the policy. (*Folios* 226, 241, 287.)

2. Proof showing, or tending to show, that the secretary had waived the delivery of the preliminary proofs, within the time required by the by-laws of the company, and by the conditions of the policy itself, was improperly admitted. The secretary had no authority to deprive the company of the benefit of that or any other condition in the policy. (*Folios* 181, 185.)

3. The proof that the secretary consented to the assignment of policies was improperly admitted. (*Folios* 102 *to* 184.)

The secretary has no power of assenting to the assignment of a policy, except in the two cases provided for at folios 282 and 285-6. There is not the least pretence of authority in the secretary to consent to the assignment of a policy to secure a mortgage. That case is specially provided for in the policy itself, and also in the by-laws. (*Folios* 238, 285.)

☞ Corp. 110-113, 2d ed., 256, 3d ed.; *Wheat.* 113; *Mass.* 58; *do.* 29; *Pick.* 516-17. ☜

4. The testimony of the secretary, that he was in the habit of using his discretion in consenting to the assignments of policies, was improperly admitted. (*Folio* 188.)

5. Proof that the company's sign was over the door of the secretary's office, was wholly immaterial. (*Folio* 191.)

6. Proof that the company never found fault with the secretary, on the ground that he had exceeded his authority, was improperly admitted. (*Folio* 199.)

There was no proof that the directors ever knew of the act in question, or any similar act.

*Second.* If the court shall hold any part of the proof objected to irrelevant, or inadmissible for any other reason, the judgment must be reversed, and a new trial granted. (*Marquand* v. *Webb,*

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover

16 *J. R.* 92; *Osgood* v. *Manhattan Co.* 3 *Cow.* 621; *Myers* v. *Malcolm*, 6 *Hill*, 296.)

*Third.* The circuit judge erred in refusing to nonsuit the plaintiff. (*Folios* 206 *to* 209 *and* 214.)

1. The preliminary proofs were not delivered within the time required by the policy, and no authority whatever is shown in the secretary to dispense with that condition precedent in the policy.

2. No authority was shown in the secretary to assent to the mortgage given by the assured to Gridley, and the giving of that mortgage avoided the policy, unless the mortgage was assented to by the directors, as required by the by-laws, and also by the policy. (*Folios* 194, 226, 238, 285.)

3. The property insured was alienated by the assured after the issuing of the policy, within the words, spirit, and intent of the 7th section of the charter of the company, (*folio* 250,) and the policy thereby became void.

(1.) The mortgage to Gridley was a conditional alienation of property.

(2.) The property was absolutely conveyed by the assured on the 7th of August, 1837. The restrictions in the charter are for the benefit of the stockholders, and cannot be dispensed with or evaded, even by the board of directors, much less by an officer of the board.

☞ REPLY.—14 *Mass.* 61–2; 2 *Dow. Pr. R.* 210,—lease is alienation. ☜

*Joseph S. Colt, Attorney, and*
*Rufus W. Peckham, Counsel,* for defendant in error.

*First.* The first exception was taken to the admission of the affidavit of the fire, on two grounds. (*Folio* 176.)

1. For variance from the declaration. (*Folio* 176.) The declaration averring it was made by the assured; whereas, it was made by the assignee. (*Folio* 100.)

2. That the *assured* should make the affidavit.

3. Because the affidavit was not made within the thirty days. The first ground of objection presents at most a mere ques-

tion of variance, which, it is too well settled to require the citation of cases, may be disregarded by the circuit judge on the trial; and the exercise of this discretion will not be reviewed on error. (2 *R. S.* 206, § 79; *Mappa* v. *Pease,* 15 *Wend.* 669; *Mann* v. *Herk'r Ins. Co.* 4 *Hill,* 187; *The Traders' Ins. Co.* v. *Robert,* 9 *Wend.* 165, 404. *Where the facts are entirely parallel.*)

Another answer is, that the party in interest is, in reality, " the plaintiff."

The second ground of objection is not clear—whether it claims a variance from the declaration, or a non-compliance by the proof with the requirements of the policy. In either view it is without force. As a variance, if any, it might be disregarded at the trial. Another answer,

If the policy had been assigned, as the plaintiff claims and proves, then the assignee was " the assured," the real plaintiff. (9 *W.* 165.)

The third ground—the making of the affidavit within the thirty days—was waived by the company, through their secretary and general agent. (*Folios* 180 *to* 188.)

*Second.* The exception that performance and not a waiver had been averred in the declaration, does not rise to the dignity of a variance. It is the proper mode of declaring. But if it be a variance, then the judge had a right to disregard it. (*Folio* 181; 2 *Chit. Pl. 9th ed.* 157, *note y; Williams* v. *Matthews,* 3 *Cow.* 252; 5 *Pick.* 436, *and Traders' Ins. Co.* v. *Robert,* 9 *Wend.* 404, *entirely analogous.*)

☞ May aver performance, and prove it by waiver—waiver is equal to performance. ☜

*Third.* The decisions made by the circuit judge during the examination of the witness Joice were right. In fact, the objections to them were not insisted upon, but were all abandoned on the argument, in the supreme court.

*Fourth.* The motion for a nonsuit was properly overruled upon all the grounds presented. (*Folio* 206.)

Clearly so when the testimony closed on both sides. (*Folio* 214.)

1st *Ground.* The secretary, Joice, being a principal officer and agent of the company, his authority to waive any defect in

the preliminary proof should be presumed until the contrary appeared. (*Bank of Vergennes*, v. *Wormer*, 7 *Hill*, 91; *Paley Agency*, 162–3, *and note*, 2 *Am. ed.;* 15 *J*. 44; *Story Ag.* § 19, 114; 1 *Esp*. 61; 2 *Kent*, 620–1, *and note* (*c*); 7 *W*. 31.)

2d. The proof showed him to be a general agent of the company, and that he was the officer who received the preliminary proofs and acted upon them.

His was the only office where the business of the company was transacted, and he was the only agent thereat. (*Folio* 191; *Turley* v. *N. Am. Ins. Co.*, 25 *Wend*. 378; *McMasters* v. *The Western Mut. Ins. Co.*, 25 *Wend*. 381–82; *Ætna Fire Ins. Co.* v. *Tyler*, 16 *Wend*. 401–2—*Opinion of the chancellor;* *Francis* v. *Ocean Ins. Co.* 6 *Cow*. 404; *Do.* 2 *Wend*. 64; *Vose* v. *Robinson*, 9 *J. R.* 192.)

3d. The secretary was the proper organ of the company, and he informed the agents of the plaintiff, when notice of the fire was given to the company, that the company would not pay the insurance at all, on the ground as stated, of the conveyance of the premises by Conover. (*Folios* 181–185; *see the three cases last cited.*)

This made any preliminary proof unnecessary. (*Folio* 192.) The company had already determined upon their ground of defence, and that they would not pay at all, and their agent made it known, pursuant to their determination.

The case of Dawes v. The N. R. Ins. Co. (7 *Cow*. 462) is entirely distinguishable from the case at bar. But that case has never been followed, and for the integrity of insurance companies I trust never will be.

˙ 2d *Ground of nonsuit.* The secretary had authority to consent to the assignment of this policy.

1. For all the reasons stated under the first ground of nonsuit as to his general authority.

2. He was the only officer that had any authority on the subject of giving consent, or as much authority as any other. (*By-Law, fol*. 285–6.)

3. He had uniformly given such consents, and none had been given by any other officer, or in any other way. (*Joice's Testy. fol*. 189; *Staat's testy*. 212, 213.)

The Mutual Insurance Co. of the City and County of Albany *agt.* Conover.

And the defendants' own books bore full evidence of his authority.

The company cannot say that the book showed no assignment, except such as had been made prior to this. (*Folio* 213.) The inference from the language in the bill is the other way, as was the fact. If otherwise, they had the book, and could have corrected it. Error is never presumed.

*Again.* Assuming both parties innocent, who should suffer, if either, by the wrong of the defendants' agent, who had given them security in $5,000 for the proper discharge of his duty? (*Folio* 264; 22 *Wend.* 368, *per Ver Planck, senator.*)

*3d Ground of nonsuit.* Has no application in this case. Here was no alienation. ☞ 1 *Jac. L. D.* 79; 2 *Black. Com.*; *Com. Dig.* ALIENATION; *Vin. Ab. do.*; 2 *Cruise Dig.* 90. ☜

*4th Ground.* There is nothing in this ground, if true. But there is no evidence of its truth. At the time of the *trial*, not of the *insurance*, it was admitted that the property burned was of the value insured, and no more. (*Folio* 175.)

*5th Ground.* Is without force.

The *property* insured had not been aliened to the plaintiff, but only the *policy*.

These are all the exceptions taken, and,

*Finally*, the recovery is right, and these technical objections, which an individual would be ashamed to interpose, cannot shield this company from doing justice. (16 *Wend.* 404.)

☞ *No question made upon deed.* And if was, comes to nothing. Deed was after policy, assigned with consent of comp. (9 *W.* 404, 409.) ☜

DECISION—*judgment affirmed, unanimously.*

NOTE.—JOHNSON, J. *Held*, that whether there was a variance between the declaration and proof was not material to inquire, as it was at most only such a one as the circuit judge might properly disregard on the trial, and upon which no bill of exceptions would lie.

That the consent of the assignment of the policy by the secretary, to enable the plaintiff to procure a loan by a mortgage upon the insured property, was binding upon the company.

GRAY, J., in a short opinion, expressed substantially the same views.

*Reported* 1 *Comstock*, 290.